UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | |
|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date   July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Carol Sobel | | Lucien Schmit, III |

**Proceedings:**    PLAINTIFFS' RENEWED MOTION FOR A PRELIMINARY INJUNCTION (Dkt. 39, filed May 31, 2017)

## I. INTRODUCTION

On December 12, 2016, plaintiffs www.RicardoPacheco.com, an unincorporated association, and Gregory Tuttle filed the instant action against defendant City of Baldwin Park ("the City"). Dkt. 1. The gravamen of plaintiffs' complaint is that the City has enforced an allegedly unconstitutional ordinance that restricts core political speech on private property.

On December 14, 2016, plaintiffs filed an ex parte application for a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue. Dkt. 9.

On December 27, 2016, the Court denied plaintiffs' application for a TRO. Dkt. 21. The Court concluded that plaintiffs were likely to succeed on the merits of their claim that the City's sign ordinance was an impermissible content-based restriction on speech. Id. at 5. The Court further concluded that plaintiffs had shown that the balance of equities and the public interest weighed in favor of granting a TRO. Id. at 6–7. However, because plaintiffs did not allege any exigency, the Court concluded that the matter was "better decided on a more complete record and upon a full hearing as to whether a preliminary injunction should issue." Id. at 7.

On January 6, 2017, the parties requested a continuance of the hearing regarding a preliminary injunction because the City was "considering revising portions of its Zoning Code, including the portions challenged by Plaintiffs, and in ways that counsel for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

parties believe may resolve some or all of the issues raised by Plaintiffs' lawsuit." Dkt. 22 at 1.

On April 24, 2017, the City filed an opposition to plaintiffs' request for a preliminary injunction. Dkt. 31. Although the City amended its sign ordinance, "[t]he parties disagree[d] as to the extent to which the Amended Sign Ordinance satisfies Plaintiff's complaint." Id. at 3. Plaintiffs filed a reply on May 1, 2017. Dkt. 32.

On May 10, 2017, the Court denied as moot plaintiffs' request for a preliminary injunction because the City voluntarily amended and repealed the originally challenged ordinance. Dkt. 33. "[I]n light of the entirely new scheme advanced by the Amended Ordinance, the Court thus f[ound] it inappropriate to determine whether plaintiffs [were] entitled to injunctive relief on the present record." Id. at 6. The Court denied the motion without prejudice to plaintiffs' filing an amended complaint and a renewed request for injunctive relief. Id.

On May 31, 2017, plaintiffs filed a first amended complaint, dkt. 36 ("FAC") and a renewed request for a preliminary injunction enjoining the enforcement of the City's amended sign ordinance, dkt. 37 ("MPI"). The City filed an opposition on June 14, 2017, dkt. 39 ("Opp'n"), and plaintiffs filed a reply on June 21, 2017, dkt. 40 ("Reply").

The Court held oral argument on July 10, 2017. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. The Original Sign Ordinance

Originally, Baldwin Park Municipal Code ("BPMC") § 153.170.030 required individuals to obtain a permit before displaying a sign within the City, unless the sign was expressly exempted by § 154.170.040. FAC ¶ 14. There was no time limit for deciding whether to grant or deny a permit. Compl. ¶ 23.

BPMC § 153.170.040(C)(11) exempted from the permit requirement political signs on private property, but only for those signs related to elections and only for the "45 days prior to [an] election" and no later than "14 days following the election." FAC ¶ 15. BPMC §153.170.040(C)(10) exempted "noncommercial signs on private property," but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

allowed each property to display only two signs, including flags, restricting the size of each sign to five square feet and each flag to six square feet. Id. ¶ 16. Other exemptions addressed other categories of signs, including, inter alia real estate signs, holiday signs, and signs at construction sites. Id. ¶¶ 17–18.

Plaintiff www.RicardoPacheco.com is, according to plaintiffs, an "unincorporated association" that seeks to promote transparent governance in the City of Baldwin Park. FAC ¶ 10. Plaintiffs seek to express their views regarding allegations of corruption by City Councilmember Ricardo Pacheco. FAC ¶ 9. As a result, members of the association displayed signs on private property and on the sides of a truck. Id. ¶¶ 9–10.

Tuttle is a business owner in the City. Id. ¶¶ 11, 24. On November 2, 2016, Tuttle displayed the sign below at his business. Id. ¶ 25.



On the same day, the City's Code Enforcement Division issued Tuttle a "Notice of Violation" of the original BPMC § 153.170.030 for displaying the sign without a permit. Id. ¶ 26. The Notice provided Tuttle with two weeks to comply or remove the sign. Id. On November 17, 2016, a Code Enforcement officer issued an Administrative Citation to Tuttle for his alleged violation of the original sign ordinance. Id. ¶ 27. The citation imposed a $100 fine and threatened heightened fines for each day the violation continued. Id. On November 22, 2016, Code Enforcement Division mailed Tuttle a "Failure to Comply Notice," informing him that a Notice of Violation was issued on November 2, 2016 and a subsequent inspection on November 17, 2016 revealed that the property was still in violation of the ordinance. Id. ¶ 28.

Juan Zuniga Rios is a resident of the City and involved with www.Ricardo Pacheco.com. Id. ¶ 29. On the fence of his home, Rios displayed the same sign for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

which Tuttle was cited. Id. On November 1, 2016, the Code Enforcement Division issued to Rios a Notice of Violation of the original BPMC § 153.170.040(C)(10) for the size of Rios's sign, and of the original BPMC § 153.170.050(P) for the location of the sign. Id. ¶ 30. On November 16, 2016, a Code Enforcement officer issued an Administrative Citation to Rios for the two alleged violations of the original sign ordinance. Id. ¶ 31. On November 22, 2016, Code Enforcement Division mailed Rios a "Failure to Comply Notice," informing him that a subsequent inspection on November 16, 2016 revealed that the property was still in violation of the ordinance. Id. ¶ 32.

Gabriel Pelaez owns a business in the City, is a member of www.Ricardo Pacheco.com, and displayed the same sign that Tuttle displayed. Id. ¶ 33. On or about November 2016, the Code Enforcement Division issued Pelaez a Notice of Violation of the original BPMC § 153.170.030 for displaying a sign on his property without a permit. The Notice threatened that failure to comply by November 26, 2016 would result in an administrative citation. Id.

Robert Ehlers also resides in the city, is a member of www.RicardoPacheco.com, and displayed a sign similar to Tuttle's sign. Id. ¶ 36. On or about November 2016, the Code Enforcement Division issued Ehlers a Notice of Violation of the original BPMC § 153.170.030 for displaying a sign on his property without a permit. The Notice threatened that failure to comply by December 7, 2016 would result in an administrative citation. Id.

### B. The Amended Sign Ordinance

On April 5, 2017, Baldwin Park's City Council adopted an amended sign ordinance. Dkt. 37-2 ("Amended Ordinance"); dkt. 31-1, Declaration of Robert Nacionales Tafoya ¶¶ 4–5.

The Amended Ordinance was enacted with the intent to:

1. "Implement the city's urban design and safety standards . . . ."
2. "Maintain and enhance the city's appearance by regulating the design, character, location, number, type, quality of materials, size, illumination and maintenance of signs."
3. "Protect and improve pedestrian and vehicular traffic safety . . . ."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

4. "Eliminate traffic safety hazards to pedestrians and motorists posed by off-site signs."
5. "Generally limit private signage to on-site locations to protect the aesthetic environment from . . . visual clutter . . . while providing channels of communication to the public."
6. "Allow the communication of information for commercial and noncommercial purposes without regulating the content of noncommercial messages."
7. "Respect and protect the right of free speech by sign display, while reasonably regulating the structure, location and other non-communicative aspects of signs, generally for the public health, safety, welfare and specifically to serve the public interests in traffic and pedestrian safety and community aesthetics."
8. "Minimize the possible adverse effects of signs on nearby public and private property."
9. "Serve the city's interests in maintaining and enhancing its visual appeal by preventing the degradation of visual quality which can result from excess signage."
10. "Protect investments in property and lifestyle quality made by persons who choose to live, work or do business in the city."
11. "Defend the peace and tranquility of residential zones and neighborhoods."

BPMC § 153.170.010. Like the original ordinance, the Amended Ordinance requires individuals to obtain a permit before displaying a sign within the City, unless the sign is expressly exempted by § 154.170.040. However, the *new* § 154.170.040 creates a classification scheme with two general categories: non-residential and residential. Id. § 153.170.040(C).

With respect to non-residential signs, the new ordinance limits the number and size of signs and flags that may be displayed. Id. § 153.170.040(C)(1). On non-residential property of less than 175,000 square feet in lot size, "[t]he following categories of signs do not require a sign permit:"

(a) up to 40 flags or pennants with a combined area of no more than 120 square feet on a staff or pole of no longer than 20 feet;
(b) up to 15 permanent signs with a combined area of no more than 75 square feet and a height of no more than eight feet, however, each individual sign may not exceed 24 square feet;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

   (c)  up to four temporary window signs with a combined area of no more than 24 square feet, except that no more than 40% of the area of any given window may be covered by window signs; and

   (d)  up to eight other temporary signs with a combined area of no more than 30 square feet and a height of no more than four feet.

Id. Plaintiffs contend that the size limit on temporary non-residential signs, 30 square feet, is just slightly more than half of Tuttle's original sign. FAC ¶ 22. The permissible number and size of such displays is greater for non-residential property of more than 175,000 square feet in lot size. BPMC § 153.170.040(C)(1).

The permissible number and size of signs and flags that may be displayed on residential properties is smaller than the limits imposed for non-residential properties. Id. § 153.170.040(C)(2). On residential property, "[t]he following categories of signs do not require a permit:"

   (a)  up to three flags or pennants with a combined area of no more than 18 square feet on a staff or pole of no longer than eight feet;

   (b)  up to three permanent signs with a combined area of no more than 12 square feet and a height of no more than four feet;

   (c)  up to six temporary window signs with a combined area of no more than nine square feet, except that no more than 50% of the area of any given window may be covered by window signs; and

   (d)  up to four other temporary signs with a combined area of no more than ten square feet and a height of no more than three feet.

Id. Plaintiffs contend that the 10-square-foot limit on temporary residential signs is just one-fifth of Rios's original sign. FAC ¶ 23.

The Amended Ordinance provides the following exceptions to the general rules for residential and non-residential restrictions:

- A business holding a grand opening or promoting a special product, sale, or event may display one temporary sign—including a banner not exceeding 50 square feet, an inflatable sign not exceeding 50 feet in height, or a pennant not to exceed 15 percent of the square footage of the lot—for no longer than 30

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

consecutive days, and for no more than four non-consecutive times during a 12-month period. Id. § 153.170.060(A)–(B) ("Special Event Provisions").

- A newly established business may display up to three temporary signs— including all sign types as permitted by the Special Event Provisions, banners not exceeding 60 square feet, and "single-pole flags" not exceeding 35 square feet—for no more than 60 days (with the possibility for a 60-day extension). Id. § 153.170.060(C) ("New Business Provision").
- For three days before and after Memorial Day, Independence Day, and Veterans Day, an additional flag of up to 12 square feet may be displayed. Id. § 153.170.040(C)(3) (the "Additional Flag Provision").
- For 45 days before and 14 days after any election for which there are polling places operating in the City, five additional signs of up to 12 square feet and four feet tall may be displayed. Id. § 153.170.040(C)(4) (the "Election Provision").

The Amended Ordinance also provides sign regulations for specific land uses, including for service stations and automobile dealerships. Id. § 153.170.090. Finally, the Amended Ordinance provides time limits for approval of permit applications for temporary and permanent signs. Id. § 153.210.265.

    None of the plaintiffs have displayed their signs since fines were assessed against them in December 2016. FAC ¶ 37. As a result, plaintiffs contend that enforcement of the City's sign ordinance over the last six months has shut down plaintiffs' primary form of expression. Id. Other members of the association "have been deterred from displaying their own signs relating to City politics and their affiliated organization's views because of the threat of prosecution, both administrative and criminal, and the imposition of fines." Id. Tuttle, Rios, Pelaez, and Ehlers, along with other members of the association, seek to display political signs of visible and communicable size at their homes and businesses. Id. ¶ 38.

### III. LEGAL STANDARD

    "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). Therefore, a district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." Id. at 22. Such a showing requires that the plaintiff establish that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

he or she "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20; see Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009); see also Johnson v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009); Am. Trucking Ass'ns Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1132 (9th Cir. 2011) (interpreting Winter and explaining that the "sliding scale" test for preliminary injunctive relief remains valid). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief. Winter, 555 U.S. at 22; Am. Trucking, 559 F.3d at 1052. It is not enough that the claimed harm be irreparable—it also must be imminent. Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988). Further, "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief," rather than merely allege imminent harm. Id. (emphasis in original). Conclusory affidavits are insufficient to demonstrate irreparable harm. Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiffs appear to argue that four provisions of the Amended Ordinance are unconstitutional for the following reasons: (1) BPMC §§ 153.170.160, which includes the Special Event and New Business Provisions, imposes impermissible content-based restrictions on speech because it prefers commercial speech over non-commercial speech, MPI at 4–8; (2) the Additional Flag Provision imposes an impermissible content-based restriction on speech because an additional flag is permitted on residential properties for three days before and after Memorial Day, Independence Day, and Veterans Day – but not for other holidays or celebrations, id. at 9; (3) the Election Provision is (a) insufficient in duration (given the length of political campaigns) and in size (given the myriad

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

concurrent races in an election year), and (b) favors speech about electoral politics over other matters of public concern; and (4) BPMC § 153.170.140(C)(2) restricts the size of temporary signs on residential property such that signs so small as to be "unreadable." MPI at 8–9.

It is undisputed that the Amended Ordinance constitutes a regulation on speech. The Court thus considers whether the challenged provisions impose content-based or content-neutral restrictions on speech in order to determine the appropriate level of scrutiny to apply to such regulations. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015). A content-based restriction on speech is subject to strict scrutiny. Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."). "In contrast, regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." Id. (citation omitted).

### 1. Speaker Preference in Non-Residential Signs

Plaintiffs argue that the Special Event and New Business Provisions (collectively, "Business Provisions") create a preference for commercial speech over non-commercial speech, which constitutes an impermissible content-based restriction on speech. MPI at 4. The City contends that the Business Provisions do not restrict or in any way address the content of such signs. Opp'n at 7. The City asserts, for example, that Tuttle could host a special event at his business and "display the very sign he is suing over." Id. Thus, the City argues that such provisions are content neutral. Id. at 9.

The City is correct that the Business Provisions do not, on their face, restrict the content of a sign that a business displays pursuant to the ordinance. However, the Business Provisions prefer some speakers (new businesses and businesses promoting a special event) to other entities. Therefore, the Court finds that the Business Provisions impose a speaker-based distinction. "Characterizing a distinction as speaker based is only the beginning—not the end—of the inquiry." Reed, 135 S. Ct. 2230–31. The Supreme Court has made clear that "the fact that a distinction is speaker based does not . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

. automatically render the distinction content neutral." Id. at 2230. "Because '[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content,'" the Supreme Court has "insisted that 'laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.'" Id. (quoting Citizens United v. FEC, 558 U.S. 310, 340 (2010) and Turner, 512 U.S. at 658); see Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1266 (11th Cir. 2005) ("The sign code exemptions that pick and choose the speakers entitled to preferential treatment are no less content based than those that select among subjects or messages."). The Court finds that there are "serious questions" as to whether the City's preference for speakers that are businesses, in particular businesses hosting special events, reflects a content preference for commercial speech. See Alliance for the Wild Rockies, 632 F.3d at 1132.[1] For example, if the City did not hold such a preference, why wouldn't the City permit *any* entity on non-residential property to display a sign not exceeding 50 square feet for 30 consecutive days up to four non-consecutive times during a 12-month period? See BPMC § 153.170.060(A); cf. Chaker v. Crogan, 428 F.3d 1215, 1227 (9th Cir. 2005) ("The Supreme Court has looked skeptically on statutes that exempt certain speech from regulation, where the exempted speech implicates the very same concerns as the regulated speech."). "Were the . . . limitation unrelated to the content of expression, there would have been no perceived need" for the City to permit businesses alone to display additional signs around certain commercial events. See Turner, 512 U.S. at 659.

Because the Court finds that the Business Provisions "impose[] content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." See Reed, 135 S. Ct. at 2231. The City

---

[1] The City points to Timilsina v. W. Valley City, 121 F. Supp. 3d 1205 (D. Utah 2015), in which the Utah district court concluded that a "'Grand Opening exception" permitting a person to display signs in the thirty days after obtaining a business license was content neutral. See Opp'n at 7–8. The Timilsina court concluded that the speaker-based distinction embodied in the Grand Opening exception did not reflect the legislature's content preference because the ordinance "place[d] no restrictions on the content of the sign a new business licensee erects." 121 F. Supp. 3d at 1218. This Court declines to follow Timilsina, which is not binding authority and does not appear to accord with Reed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

makes no attempt to meet this burden. Furthermore, the City makes no effort to show that the Amended Ordinance would satisfy even intermediate scrutiny (which would apply if the Business Provisions were, as the City contends, content neutral). See Opp'n at 9. "A statute will survive intermediate scrutiny if it: (1) is designed to serve a substantial government interest; (2) is narrowly tailored to serve that interest; and (3) does not unreasonably limit alternative avenues of communication." Vivid Entm't, LLC v. Fielding, 774 F.3d 566, 580 (9th Cir. 2014) (quotation marks omitted). "To satisfy this standard, the law need not be the least speech-restrictive means of advancing the Government's interests"; the test is whether "the means chosen . . . burden substantially more speech than is necessary to further the government's legitimate interests." Turner, 512 U.S. at 662 (quotation marks omitted). The "essence of narrow tailoring" is to "focus[ ] on the source of the evils the [government] seeks to eliminate . . . and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." Ward v. Rock Against Racism, 491 U.S. 781, 799 n.7 (1989).

There appears to be a readily identifiable and content-neutral means of achieving the stated intent of the Business Provisions. With respect to the Special Event Provisions, the City could authorize *any* entity on non-residential property to display one sign—including a banner not exceeding 50 square feet, one inflatable sign not exceeding 50 feet in height, or a pennant not exceeding 15 percent of the square footage of the lot—for 30 consecutive days up to four non-consecutive times during a 12-month period. With respect to the New Business Provision, the City could authorize *any* entity on non-residential property to display no more than three signs—including any sign type listed in the Special Event Provisions, banners not exceeding 60 square feet, and "single-pole flags" not exceeding 35 square feet—once during the lifetime of the entity, for no more than 60 days (with the possibility for a 60-day extension). The City has not explained why these rules would not satisfy the City's interests. "Even under the intermediate scrutiny 'time, place, and manner' analysis, we cannot ignore the existence of these readily available alternatives." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 950 (9th Cir. 2011) (en banc). Accordingly, the Court concludes that plaintiffs are likely to succeed in demonstrating that the Business Provisions impose speaker-based restrictions that are content based, and that the provisions are not narrowly tailored to satisfy compelling, or even substantial, government interests.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

### 2. Additional Flags near Holidays on Residential Properties

Plaintiffs argue that the Additional Flag Provision imposes an impermissible content-based restriction on speech because an additional flag may be displayed for three days before and after Memorial Day, Independence Day, and Veterans Day – but not for other holidays or celebrations. MPI at 9. The City argues that the Additional Flag Provision is content neutral because "people are free to put whatever content they want [o]n their flags." Opp'n at 11.

However, "just as with speaker-based laws, the fact that a distinction is event based does not render it content neutral. . . . A regulation that targets a sign because it conveys an idea about a specific event is no less content based than a regulation that targets a sign because it conveys some other idea." Reed, 135 S. Ct. at 2231. The Circuit Court for the District of Columbia, interpreting Reed, concluded that "[w]hat Reed held constitutionally suspect was the way in which the Town of Gilbert's Sign Code made content-based distinctions among different types of issues and events[.]" Act Now to Stop War & End Racism Coal. v. District of Columbia, 846 F.3d 391, 405 (D.C. Cir. 2017). Because the Additional Flag Provision makes a distinction among different types of events, the Court finds that there are "serious questions" as to whether the City's authorization of an additional flag around Memorial Day, Independence Day, and Veterans Day reflects a content preference for speech concerning those particular holidays. See Alliance for the Wild Rockies, 632 F.3d at 1132. For example, if the City did not hold such a preference, why wouldn't the City permit an additional flag for six days, up to three times per year? "Were the . . . limitation unrelated to the content of expression, there would have been no perceived need" for the City to permit the display of an additional flag around the three specified holidays. See Turner, 512 U.S. at 659; cf. Chaker, 428 F.3d at 1227 ("The Supreme Court has looked skeptically on statutes that exempt certain speech from regulation, where the exempted speech implicates the very same concerns as the regulated speech.").

Because the Court finds that the Additional Flag Provision likely constitutes a content-based regulation of speech, the Court considers whether the provision can satisfy strict scrutiny. See Reed, 135 S. Ct. at 2231. Again, the City makes no attempt to meet this burden. Furthermore, the City makes no effort to show that the Additional Flag Provision would satisfy even intermediate scrutiny. See Opp'n at 11. Nevertheless, there appears to be a readily identifiable and content-neutral means of achieving the stated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

intent of the Additional Flag Provision. As noted above, the display of an additional flag for six days, up to three times per year would just as effectively achieve the City's goals, as stated in BPMC § 153.170.010. The City has not explained why such a rule would not satisfy the City's interests. As noted above, "[e]ven under the intermediate scrutiny 'time, place, and manner' analysis, we cannot ignore the existence of these readily available alternatives." Comite de Jornaleros, 657 F.3d at 950. Accordingly, the Court concludes that plaintiffs are likely to succeed in demonstrating that the Additional Flag Provision imposes an event-based restriction that is content based, and that the provision is not narrowly tailored to satisfy compelling, or even substantial, government interests.

### 3. Additional Signs near Elections

Plaintiffs challenge the constitutionality of the Election Provision, which authorizes the display of five additional signs—limited to a combined 12 square feet—45 days before and 14 days after any election for which there are polling places in the City. MPI at 9–10. Plaintiffs argue that the Election Provision's limitations on the duration and size of additional signs around elections are too restrictive given the length of political campaigns and the myriad concurrent races in an election year. Id. at 10. In addition, plaintiffs contend that the Election Provision constitutes a content-based restriction on speech because the provision favors speech about electoral politics over other matters of public concern (e.g., the proposed federal budget). Id. The City argues that its regulation of signs near elections is content-neutral because "nothing in the provision limits the content of the thoughts express in the additional signs" and "the extra signs are allowed to address any issue the owner wants." Opp'n at 10.

As described above, an event-based preference for speech may be content based if the regulation targets speech that conveys a certain idea. See Reed, 135 S. Ct. at 2231. While the Election Provision seemingly seeks to *increase* political speech around elections, that does not preclude a finding that the provision is a content-based regulation of speech. Indeed, the Supreme Court has "repeatedly rejected the argument that discriminatory . . . treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas." Reed, 135 S. Ct. at 2229 (quotation marks omitted). Even though "[t]his type of ordinance may seem like a perfectly rational way to regulate signs, . . . a clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem entirely reasonable will sometimes be struck down because of their content-based nature." Id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

2231 (quotation marks omitted). The Court thus finds that there are "serious questions" as to whether the City's authorization of additional signs around election days reflects a content preference for speech concerning matters related to electoral politics. See Alliance for the Wild Rockies, 632 F.3d at 1132. For example, if the City did not hold such a preference, why would it bother to permit additional signs in the days before and after elections in the City? Again, "[w]ere the . . . limitation unrelated to the content of expression, there would have been no perceived need" for the City to permit the display of additional signs near elections. See Turner, 512 U.S. at 659.

Because the Court finds that the Election Provision likely constitutes a content-based restriction on speech, the Court considers whether the provision can satisfy strict scrutiny. See Reed, 135 S. Ct. at 2231. Again, the City makes no attempt to carry its burden. Furthermore, the City makes no effort to show that the Election Provision would satisfy even intermediate scrutiny. See Opp'n at 11. Nevertheless, there appears to be a readily identifiable and content-neutral means of increasing a speaker's capacity for speech when there are time-sensitive matters of public concern that might require additional speech. For example, the City could authorize five additional signs of up to 12 square feet for 60 days one time per year at the time of the speaker's choosing. Again, "[e]ven under the intermediate scrutiny 'time, place, and manner' analysis, we cannot ignore the existence of these readily available alternatives." Comite de Jornaleros, 657 F.3d at 950. Accordingly, the Court concludes that plaintiffs are likely to succeed in demonstrating that the Election Provision imposes an event-based restriction that is content based, and that the provision is not narrowly tailored to satisfy compelling, or even substantial, government interests.

### 4. Size of Residential Signs

Plaintiffs argue that the Amended Ordinance imposes such restrictive size limits on residential signs that it is now "impossible for members of the Plaintiff organization to communicate their message from their residences because the limits on their signs would make them so small as to be unreadable." MPI at 8. The City argues that plaintiffs have failed to submit any admissible evidence showing that the size limitations imposed by BPMC § 153.170.040(2) would make residential signs illegible. Opp'n at 11–13. In addition, the City contends that a size limitation on signs is a permissible "time place and manner" restriction. Id. at 13–14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

The Court finds the City's arguments persuasive. First, plaintiffs have failed to show that they could not communicate their message using 18 square feet of flags or pennants, 12 square feet of permanent signs, 9 square feet of temporary window signs, *and* 10 square feet of temporary signs. See BPMC § 153.170.040(C)(2). Second, "[i]t is common ground that governments may regulate the physical characteristics of signs–just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise." City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994). Among the stated purposes of the Amended Ordinance are city appearance and pedestrian and vehicular traffic safety. See BPMC § 153.170.010(B)–(C). "Federal courts routinely recognize beauty and safety as significant governmental interests in the context of freedom of speech claims relating to signs." Icon Groupe, LLC v. Washington Cty., No. 3:12-cv-1114-AC, 2015 WL 3397170, at *7 (D. Or. May 26, 2015); see Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507–08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."); Get Outdoors II, LLC v. City of San Diego, 506 F.3d 886, 893 (9th Cir. 2007) ("The Supreme Court has recognized that a city's interests in traffic safety and aesthetics are sufficient government interests for the purposes of this analysis."); Foti v. City of Menlo Park, 146 F.3d 629, 637 (9th Cir. 1998) ("The City's asserted interests in the ordinance are the oft-invoked and well-worn interests of preventing visual blight and promoting traffic and pedestrian safety."). The Court thus finds that the Amended Ordinance's size limits on residential signs constitute reasonable time, place, and manner restrictions because they are "justified without reference to the content of the regulated speech, . . . narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." Ward, 491 U.S. at 791 (quotation marks omitted). Accordingly, the Court concludes that plaintiffs are not likely to succeed in demonstrating that the size limits on residential signs violate plaintiffs' First Amendment rights.

    **5.    Summary**

The Court concludes that plaintiffs are likely to succeed on the merits of their claim that the City's regulations of signs under BPMC § 153.170.060 (the Business Provisions), § 153.170.040(C)(3) (the Additional Flag Provision), and § 153.170.040(C)(4) (the Election Provision) constitute impermissible restrictions on speech in violation of First and Fourteenth Amendments to the U.S. Constitution. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
|---|---|---|---|
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

Court concludes that plaintiffs are unlikely to succeed on the merits of their claim with respect to BPMC § 153.170.040(C)(2).

### B. Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). In addition, the Ninth Circuit has stated that, "[u]nder the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a *colorable* First Amendment claim." Warsoldier v. Woodford, 418 F.3d 989, 1001 (9th Cir. 2005) (emphasis added). Because the Court has concluded that plaintiffs present colorable First Amendment claims with respect to the Business, Flag, and Election Provisions, the Court finds that plaintiffs have demonstrated that they are likely to suffer irreparable harm in the absence of preliminary relief. See U.S. Mission Corp. v. City of Mercer Island, No. 14-cv-1844-RSM, 2015 WL 540182, at *8 (W.D. Wash. Feb. 10, 2015) ("Because the Mission has, at a minimum, raised a colorable claim that its First Amendment rights have been infringed, it has sufficiently established that it will suffer an irreparable injury absent an injunction barring enforcement of the Ordinance against it.").

### C. Balance of the Hardships

Absent an injunction, plaintiffs risk violating the law if they display signs not expressly exempted from the City's permit requirement. The City has not articulated any harm that it would suffer from enjoining the enforcement of portions of the Amended Ordinance during the pendency of this case. A "case [that] raises serious First Amendment questions" "compels a finding that the potential for irreparable injury exists, or at the very least, that the balance of hardships tips sharply in [plaintiffs'] favor." Warsoldier, 418 F.3d at 1002; see also Doe v. Harris, 772 F.3d 563, 583 (9th Cir. 2014) ("As to the balance of equities, we recognize that while the preliminary injunction is pending, there will be some hardship on the State. Nevertheless, the balance of equities favors Appellees, whose First Amendment rights are being chilled."). Accordingly, the Court concludes that the balance of the equities tips in plaintiffs' favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

### D. Public Interest

The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles," Harris, 772 F.3d at 583, because "the "ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people subjected to the same restrictions, Klein v. City of San Clemente, 584 F.3d 1196, 1208 (9th Cir. 2009) (quotation marks omitted). The Court therefore concludes that the public interest weighs in favor of an injunction.

### E. Plaintiffs' Request for Waiver of Bond

Plaintiffs request that the Court excuse them from the requirement to post bond. MPI at 17. Federal Rule of Civil Procedure 65(c) provides that this "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Ninth Circuit has recognized that Rule 65(c) "invests the district court with discretion as to the amount of security required, if any." Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation marks omitted). For example, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Id.

In the present case, there is no realistic likelihood that the City will be harmed by an order enjoining enforcement of Business, Flag, and Election Provisions during the pendency of the case. In light of these circumstances, the Court exercises its discretion to set a nominal bond under Rule 65(c). See Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999) (upholding a nominal bond where there was public interest underlying the litigation, the cost to the government would be minimal, and the class advancing the public interest had unremarkable financial means). The Court finds that a bond in the amount of $100 is sufficient in this case.

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiffs' request for a preliminary injunction with respect to BPMC § 153.170.040(2), which impose size limits on residential signs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-09167-CAS(GJSx) | Date | July 10, 2017 |
| Title | WWW.RICARDOPACHECO.COM ET AL. v. CITY OF BALDWIN PARK | | |

The Court **GRANTS** plaintiffs' request for a preliminary injunction with respect to BPMC § 153.170.060 (the Business Provisions), § 153.170.040(C)(3) (the Additional Flag Provision), and § 153.170.040(C)(4) (the Election Provision). At oral argument, the City raised concerns about the scope of any injunction. It appears that enjoining the enforcement of these three exemptions from the permit requirement could result in plaintiffs' being required to seek a permit to display their signs. Because the Court does not consider this to be an appropriate result, the Court directs the parties to meet and confer and submit a narrowly tailored proposed order addressing the Court's conclusions above. The parties shall submit such a proposed order no later than July 19, 2017.

    IT IS SO ORDERED.

                                                                                                  00 : 22

                                                                Initials of Preparer          CMJ